IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL ACTION |
| | : | |
| v. | : | No. 12-418-1 |
| | : | |
| ROBERT LAMAR WHITFIELD | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                                                                                           **May 8, 2013**

Defendant Robert Lamar Whitfield asks this Court to suppress a statement he made to Bureau of Alcohol, Tobacco, and Firearms (ATF) Special Agent John Bowman following his arrest on July 18, 2012. In his motion to suppress, Whitfield asserts he did not receive adequate *Miranda* warnings[1] prior to his interrogation, and denies having made a voluntary, knowing, and intelligent waiver of his *Miranda* rights. In particular, Whitfield contends law enforcement personnel failed to honor his request to meet with a lawyer prior to being interrogated and maintains his statement was "the product of an overborne will," "the result of implied threats, cajolery and coercion," and "the product of delay, deception and improper subterfuge on the part of the government agents." Def.'s Omnibus Mot. 14. Following a hearing on April 19, 2013, at which Special Agent Bowman was the sole witness, and for the reasons set forth below, Whitfield's motion will be denied.

**FACTS**[2]

---

[1] In *Miranda v. Arizona*, 384 U.S. 436 (1966), the United States Supreme Court "adopted a set of prophylactic measures designed to safeguard the constitutional guarantee against self-incrimination," requiring that, prior to custodial interrogation, a suspect "'must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed.'" *J.D.B. v. North Carolina*, 131 S. Ct. 2394, 2401 (2011) (quoting *Miranda*, 384 U.S. at 444)).

[2] The following facts are based on Special Agent Bowman's testimony at the April 19 motions hearing, which is both uncontradicted and credible, and which this Court credits in full.

Whitfield was arrested shortly before 9:00 a.m. on July 18, 2012. Sometime after his arrest, Whitfield was transported to the ATF office, where he was eventually placed in an interview room wearing handcuffs. At approximately 11:28 a.m., Special Agent Bowman,[3] who was assigned to interview Whitfield, entered the room and advised Whitfield of the charges against him. Bowman also advised Whitfield that if he wanted to continue to talk to Bomwan, he would first have to waive his *Miranda* right. Bowman did not have a gun on his person during the interview. Whitfield was alert and attentive during the encounter.

Because Whitfield agreed to speak with Bowman, Bowman proceeded to administer *Miranda* warnings to Whitfield. Whitfield agreed to waive his rights, signing a pre-printed "Advice of Rights and Waiver" form, which included the following "Statement of Rights":

- You have the right to remain silent.

- Anything you say can be used against you in court.

- You have the right to talk to a lawyer before we ask you any questions and to have a lawyer with you during questioning.

- If you cannot afford a lawyer, one will be appointed for you if you wish before any questioning begins.

- If you decide to answer any questions now without a lawyer present, you have the right to stop answering at any time.

Gov't Ex. 1. Whitfield signed under the "Waiver" portion of the form, which provides:

> I have read this statement of my rights or it has been read to me, and I understand these rights. At this time I am willing to answer questions without a lawyer present. No promises or threats have been made to me, and no pressure or force of any kind has been used against me.

---

[3] Bowman has 11 years of experience as an ATF Special Agent, during which time he has conducted hundreds of interviews. Bowman has also received training in how to conduct interviews, including training regarding administering *Miranda* warnings and obtaining a suspect's waiver of *Miranda* rights.

*Id.* Bowman also signed the form.[4]

After Whitfield waived his rights, Special Agent Bowman spoke with him briefly regarding the morning's events and then proceeded to document Whitfield's statement in question and answer format. The written statement is a verbatim recitation of the questions Bowman asked Whitfield and the answers Whitfield gave. After Bowman recorded the questions and answers, he went back through the statement line by line with Whitfield to make sure it was accurate, as is his practice. As part of this review process, Whitfield wrote his initials next to each answer in the statement, affirming the information was accurate. Whitfield also signed each page of the statement.

The second page of Whitfield's statement includes the question, "Robert, has anyone promised you anything or made any threats to [you] about cooperating?" followed by the answer, "no, I want to be the first one to cooperate." *Id.*, Aff. at 2. The word "no" in Whitfield's answer is preceded by the word "yes" (or, at least, the letters "y" and "e"), which has been scribbled out. Both Whitfield's and Bowman's initials appear above the scribbled-out letters. Bowman explained the letters are scribbled out because he made a mistake in recording Whitfield's answer to his question. Although Whitfield responded in the negative, Bowman started to write "yes," but then corrected his error. Both Bowman and Whitfield initialed the correction. Whitfield never stated anyone had promised him anything or threatened him. Indeed, Whitfield confirmed as much at the end of the statement, answering "no" when Bowman again asked, "has anyone made any promises or threats to you about talking today?" *Id.*, Aff. at 6.

Bowman met with Whitfield for approximately 45 minutes, from around 11:28 a.m. until around 12:10 or 12:15 p.m. Whitfield never asked for a lawyer during this time. Because

---

[4] At some point after Whitfield agreed to speak with Bowman, Bowman removed his handcuffs and cuffed one of his wrists to a railing in the interview room, leaving his writing hand free.

3

Bowman was not with Whitfield during the approximately two and a half hours between his arrest and his interview, Bowman does not know what, if any conversations, Whitfield may have had with other agents during that time. However, no one ever suggested to Bowman that Whitfield had requested a lawyer, or that he had been promised anything in exchange for his testimony. At the end of the interview, Whitfield requested a drink, and a drink was provided.

**DISCUSSION**

To safeguard the Fifth Amendment's guarantee against self-incrimination, custodial interrogation of a suspect must be preceded by *Miranda* warnings. *See J.D.B.*, 131 S. Ct. at 2401; *Colorado v. Spring*, 479 U.S. 564, 572 (1987). Although a suspect may waive his *Miranda* rights, the waiver must be "made voluntarily, knowingly and intelligently." *Spring*, 479 U.S. at 572 (quoting *Miranda*, 384 U.S. at 444). The waiver "must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 573 (quotation omitted). The waiver must have been knowing and intelligent in that it "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* (quotation omitted). "[I]f a suspect makes a statement during custodial interrogation, the burden is on the Government to show, as a 'prerequisit[e]' to the statement's admissibility as evidence in the Government's case in chief, that the defendant 'voluntarily, knowingly and intelligently' waived his rights." *J.D.B.*, 131 S. Ct. at 2401 (quoting *Miranda*, 384 U.S. at 444, 475-76).

Here, the Government has done just that through the testimony of Special Agent Bowman described above. Bowman orally reviewed Whitfield's *Miranda* rights with him and also provided him with a written statement of his rights in plain, simple language on the pre-printed "Advice of Rights and Waiver" form, which Whitfield signed. Whitfield was alert during his

interview with Bowman, and there is no indication he did not understand the rights of which he was advised. In fact, when asked during the interview whether he had read and understood "the advice of rights and waiver as outlined on ATF F 3200.4," Whitfield responded, "yes." Gov't's Ex. 1, Aff. at 1. Despite the assertion in Whitfield's motion to the contrary, there is no evidence the warnings provided by Bowman were inadequate in any way.

There is also no evidence to support Whitfield's assertion his statement was "the product of overborne will," "the result of implied threats, cajolery [or] coercion," or "the product of delay, deception and improper subterfuge on the part of the government agents." Def.'s Omnibus Mot. 14. Bowman's interview of Whitfield lasted only approximately 45 minutes, and when Whitfield requested a drink at the end of the interview, a drink was provided. Although Whitfield remained partially handcuffed during the interview, Bowman did not have a gun with him in the interview room. In his motion, Whitfield makes much of the fact that Bowman initially recorded (or began to record) Whitfield's response to the question whether anyone had promised him anything or made threats to him about cooperating as "yes" and then scribbled over this answer and wrote "no." At the April 19 hearing, however, Bowman credibly explained the scribbled-out letters as a transcription error on his part. Bowman's explanation is corroborated by the fact that he and Whitfield both initialed the correction on the statement. Whitfield also suggests the handwritten words "Yes no jail time" appear in the left margin next to the question and answer regarding promises or threats, *id.* at 13; however, no such handwriting appears on the form produced by the Government at the hearing, and Whitfield has not produced a form containing such handwriting. Nor is there any other evidence suggesting anyone made any promises to Whitfield in exchange for his statement. In sum, there is no evidence of "coercive police activity" of any kind, either during interview with Bowman or at any time

5

earlier that morning. *See Colorado v. Connelly*, 479 U.S. 157, 167 (1986) (holding "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment").

Finally, although in his motion Whitfield "asserts that he specifically asked to meet with a lawyer prior to interrogation and thereby indicated that he did not wish to answer any questions unless and until he consulted with a lawyer," Def.'s Omnibus Mot. 14, there is no evidence this is true. Special Agent Bowman specifically denied that Whitfield ever requested a lawyer while he was with Bowman, and Bowman is not aware of Whitfield having made such a request prior to being interviewed.

The Court finds the Government has satisfied its burden to prove by a preponderance of the evidence that Whitfield voluntarily, knowingly, and intelligently waived his *Miranda* rights. Accordingly, the motion to suppress statements will be denied.

An appropriate order follows.

BY THE COURT:

   /s/ Juan R. Sánchez
Juan R. Sánchez